UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAURA C. HAYES, | CASE NO. C14-1294JLR |
| Plaintiff, | ORDER |
| v. | |
| CAROLYN COLVIN, | |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff Laura Hayes appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, after a hearing before an Administrative Law Judge ("ALJ").  The court has considered the ALJ's decision, the administrative record ("AR"), and the parties' briefs. Being fully advised, the court REVERSES the Commissioner's final decision and REMANDS this action to the Commissioner for rehearing.

## II.    BACKGROUND

The facts of the case are set forth in the ALJ's decision (AR (Dkt. # 8) at 8-36), the administrative hearing transcript (AR at 37-56), and the briefs of the parties (Op. Brief (Dkt. # 11); Resp. (Dkt. # 18); Reply (Dkt. # 19)).  They are only briefly summarized here.

Ms. Hayes was 43 years old on the date last insured for DIB.  (AR at 11, 28.)  She was first diagnosed with fibromyalgia at age 22, but she was able to work as an emergency room nurse despite her illness.  (AR at 46.)  She was later diagnosed with other ailments, including undifferentiated connective tissue disorder.  (AR at 45-46).  Ms. Hayes last worked in July 2009, and in January 2010 she gave birth to a daughter with a chromosomal abnormality.  (AR at 44-45.)  She testified that she had planned to return to work after her daughter was born, but felt that her physical and mental limitations prevented her from doing so.  (AR at 45.)

Ms. Hayes filed an application for DIB on August 31, 2011.  (AR at 11.)  The Social Security Administration denied her application initially (AR at 57, 87), and on reconsideration (AR at 71, 95).  After a hearing, the ALJ once again denied her application for DIB.  (AR at 11.)

In rendering his written decision, the ALJ followed the Social Security Administration's five-step sequential process for determining whether a person is

//

//

//

ORDER- 2

disabled.[1]  At step one, the ALJ found that Ms. Hayes had not engaged in substantial

gainful activity since the alleged onset date of her disability.  (AR at 13.)  At step two, he

found that she had the severe impairments of fibromyalgia, undifferentiated connective

tissue disease, recurrent arrhythmia, obesity, affective disorder, and an organic mental

disorder.  (AR at 13.)  The ALJ also found that Ms. Hayes has sleep apnea, but he did not

consider it to be a severe impairment because it "responds well to treatment."  (AR at 18.)

At step three, the ALJ concluded that Ms. Hayes did not have an impairment or

combination of impairments that met or medically equaled the severity of the

impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.[2]  (AR at 18.)

At step four, the ALJ concluded that Ms. Hayes had the residual functional

capacity to perform light work, but that she was "limited to simple, repetitive tasks."

(AR at 20.)  In reaching this determination, the ALJ found that Ms. Hayes's "medically

determinable impairments could reasonably be expected to [produce] some of her

---

[1] *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (listing the five steps).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Social Sec. Admin*., 359 F.3d 1190, 1193-94 (9th Cir. 2004).  If a claimant cannot make an adjustment to other work in the national economy, the claimant is "disabled."  20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

[2] If the claimant's severe impairments "meet or equal" one or more of the listed impairments, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  The ALJ found that that was not the case here, however, so he proceeded to step four in the five-part sequential process.

1  symptoms." (AR at 25.)  In evaluating the severity of her limitations, however, the ALJ

2  found Ms. Hayes's testimony "not credible to establish disability." (AR at 23.)  He

3  discounted the testimony submitted by Ms. Hayes's husband, mother, friend, and mental

4  health counselor "for the same reasons." (*Id.*)  The ALJ acknowledged that Ms. Hayes

5  was not capable of returning to her previous employment as a registered nurse due to her

6  limitations.  (AR at 28.)

7       Proceeding to step five, the ALJ evaluated Ms. Hayes's "age, education, work

8  experience, and residual functional capacity," and found that there are "jobs that exist in

9  significant numbers in the national economy that [she] can perform." (*Id.*)  To arrive at

10  this conclusion, the ALJ looked to the Medical-Vocational Guidelines ("Tables") found

11  at 20 C.F.R. Part 404, Subpart P, Appendix 2.  The ALJ ultimately concluded that Ms.

12  Hayes was "not disabled."  (AR at 31.)

13       After the Social Security Administration's Appeals Council declined review (AR

14  at 1), the ALJ's determination became the final decision of the Commissioner.  Ms.

15  Hayes now asks this court to review the Commissioner's decision pursuant to 42 U.S.C.

16  § 405(g).  (Compl. (Dkt. # 1).)

17              **III.   ANALYSIS**

18       **A. Standard of Review**

19       Under 42 U.S.C. § 405(g), the court reviews the Commissioner's decision to

20  determine whether it is free from legal error and supported by substantial evidence in the

21  record as a whole.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).  "'Substantial

22  evidence' means more than a mere scintilla, but less than a preponderance; it is such

1  relevant evidence as a reasonable person might accept as adequate to support a

2  conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  The court

3  must review the "record as a whole, weighing both the evidence that supports and the

4  evidence that detracts from the Commissioner's conclusion." *Id.* (internal citations and

5  quotations marks omitted).  "The ALJ is responsible for determining credibility,

6  resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v.*

7  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A court cannot substitute its judgment for

8  that of the ALJ,  *Garrison*, 759 F.3d at 1010 (citing *Andrews*, 53 F.3d at 1039), and will

9  uphold the Commissioner's decision when the evidence is susceptible to more than one

10  rational interpretation, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  The court

11  may "review only the reasons provided by the ALJ in the disability determination and

12  may not affirm the ALJ on a ground upon which he did not rely." *Id.* (citing *Connett v.*

13  *Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

14      **B.  Ms. Hayes's Arguments**

15      Ms. Hayes asks this court to reverse the determination of the ALJ for three

16  primary reasons.  First, Ms. Hayes argues that the ALJ erred in evaluating her own

17  credibility and that of her lay witnesses.  (*See* Op. Brief at 11-19.)  Second, she contends

18  that the ALJ evaluated the medical source opinions incorrectly.  (*See id.* at 2-11.)

19  Finally, Ms. Hayes complains that the ALJ should have found that her sleep apnea was a

20  severe impairment at step two of the five-step evaluation and continued to consider it

21  throughout the analysis.  (*See* Op. Brief at 19.)  The court will address each of these

22  arguments in turn.

### 1.  The ALJ's Credibility Evaluation

Ms. Hayes complains that the ALJ came to erroneous conclusions about her own credibility and that of her lay witnesses.  (Op. Brief at 11-19.)  Before concluding that a claimant's subjective pain or symptom testimony is not credible, an ALJ must make two determinations:  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks omitted).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms."  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

As to the first inquiry, the ALJ easily found that Ms. Hayes's "medically determinable impairments could reasonably be expected to [produce] some of her symptoms" (AR at 25), and he did not make any explicit finding that she was malingering.  As to the second inquiry, however, the ALJ declared that "[t]he medical records do not support the level of limitation reported by [Ms. Hayes] and her witnesses."  (*Id.*)  He further stated that Ms. Hayes "does not have impairments that are easily observed and there are few objective findings in the record."  (*Id.*)  Insofar as the ALJ required Ms. Hayes to provide empirical evidence as to the severity of her pain and other symptoms, he erred.

The Ninth Circuit has long held that "once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986)); *see also Garrison*, 759 F.3d at 1014 ("[A] claimant is *not* required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" (quoting *Smolen*, 80 F.3d at 1282) (emphasis in original)); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) ("[T]he ALJ may not reject the claimant's subjective complaints regarding the extent and severity of her pain merely because the severity of the pain cannot be supported by objective medical evidence.").

Indeed, a claimant for DIB is not required to "produce objective medical evidence of the pain or fatigue itself, or the severity thereof. . . . Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Smolen*, 80 F.3d at 1282 (internal citations omitted). The Commissioner's own regulations support the same rule. *See* SSR 96-7p, 1996 WL 374186, at *6 ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence.").

To shore up his conclusion, the ALJ also pointed to supposed disparities between Ms. Hayes's stated limitations and her daily activities. (AR at 26-27.) It is well

1  established that the nature of daily activities may be considered when evaluating

2  credibility.  *See Burch*, 400 F.3d at 680; *Smolen*, 80 F.3d at 1284; *Fair v. Bowen*, 885

3  F.2d 597, 603 (9th Cir. 1989).  Indeed, non-work activities that are inconsistent with a

4  claim of total disability will undermine the claimant's credibility.  *Valentine v. Comm'r*

5  *of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *see also Rollins v. Massanari*,

6  261 F.3d 853, 856 (9th Cir. 2001) (finding that the claimant's daily activities of caring for

7  two young children and other household chores undermined her claims of total

8  disability).

9         The Ninth Circuit, however, has "repeatedly warned that ALJs must be especially

10  cautious in concluding that daily activities are inconsistent with testimony about pain,

11  because impairments that would unquestionably preclude work and all the pressures of a

12  workplace environment will often be consistent with doing more that merely resting in

13  bed all day."  *Garrison*, 759 F.3d at 1016 (citing *Smolen*, 80 F.3d at 1287 n.7).  Courts

14  have "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

15  activities, such as grocery shopping, driving a car, or limited walking for exercise, does

16  not in any way detract from her credibility as to her overall disability."  *Vertigan v.*

17  *Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603

18  (9th Cir.1989)).  "The Social Security Act does not require that claimants be utterly

19  incapacitated to be eligible for benefits, . . . and many home activities may not be easily

20  transferable to a work environment where it might be impossible to rest periodically or

21  take medication."  *Fair*, 885 F.2d at 603 (internal citations omitted).  The law recognizes

22  that "disability claimants should not be penalized for attempting to lead normal lives in

the face of their limitations." *Garrison*, 759 F.3d at 1016 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)).

The ALJ recounted Ms. Hayes's testimony that "she cannot sit for long periods of time[], her hands fumble and she drops things." (AR at 24.)  She spends most days watching her young daughter while sitting or lying down on the couch.  (*Id.*)  When she is able to cook, she does so while sitting on a stool.  (*Id.*)  The ALJ further summarized her testimony as follows:

> On bad days she has trouble feeding herself.  She finds bathing to be exhausting and she has difficulty raising her hands over her head.  She last [s]hopped two weeks ago, but just got one item.  She said that she cannot make jewelry on a bad day.  She does it a couple of times a week. . . . She lies down during the day after sleeping 10-12 hours.  She spends another four to six hours lying on the couch.  She said that she uses a cane on the recommendation of her therapist and her rheumatologist.  She uses it on days when she feels unsteady.

(AR at 25.)

The ALJ saw a contradiction between Ms. Hayes's testimony that she could not lift anything that weighed more than a few pounds and reports that she had struggled to lift and carry her daughter when she was a toddler.  (AR at 26.)  The ALJ speculated that a "23 month old is certainly more than ten pounds and probably more than 20." (*Id.*) The court finds this reasoning unconvincing.  The fact that a mother would struggle to pick up her only child in no way suggests that she "could concentrate on work despite the

1   pain or could engage in similar activity for a longer period given the pain involved."

2   *Vertigan*, 260 F.3d at 1050 (discussing exercise for therapeutic reasons).  Furthermore,

3   there is no evidence in the record that Ms. Hayes was able to lift her daughter without

4   difficulty at any point, and Ms. Hayes testified at the hearing that by that time she was no

5   longer able to pick up her daughter at all.  (AR at 49 ("I can't pick my daughter up.  If

6   she wants to get up into my lap, she has to crawl onto a piece of furniture so that she's

7   close enough to me that I can reach out and drag her over or help her crawl over to

8   me.").)

9        The ALJ also criticized Ms. Hayes's hobby of making beaded jewelry, citing a

10   report that she was an "'avid' jewelry maker and used her hands 'strenuously.'"  (AR at

11   26.)  But the ALJ ignored Ms. Hayes's testimony that she requires special

12   accommodations to undertake her hobby (AR at 51-52), and that she participates for only

13   "10 minutes here and 15 minutes there" (AR at 51).  Furthermore, he did not address his

14   own acknowledgement that "she cannot make jewelry on a bad day."  (AR at 25.)

15        As to Ms. Hayes's mental capabilities, the ALJ placed great emphasis on one

16   reported account from September 2011, in which Ms. Hayes stated that she sometimes

17   lost track of time at night, "that she could be working on something and look up and

18   discover that it was four hours past the time she should go to bed."  (AR at 26.)  This, the

19   ALJ concluded, "indicat[ed] excellent concentration."  (*Id.*)  There is no indication in the

20   record as to what Ms. Hayes would be doing on those occasions, however, so any

21   arguments about how this relates to ability to function in the workplace is speculative.

22   Furthermore, the ALJ did not mention that Ms. Hayes made the statement while seeking

1    treatment for insomnia.  (AR at 283.)  Ultimately, the ALJ concluded that Ms. Hayes's

2    daily activities, such as "texting friends and going to appointments; taking her daughter to

3    appointments; doing shopping; driving; and caring for her daughter from the time she

4    wakes up until her husband comes home" cast doubt on the reported severity of her

5    impairments.  (AR at 26.)

6        The ALJ failed adequately to articulate how any of these activities are inconsistent

7    with Ms. Hayes's statements about the level of impairment her pain caused her.  *Reddick*,

8    157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed

9    limitations would these activities have any bearing on Claimant's credibility.")  The

10   ability to talk on the telephone, text with friends, occasionally prepare a meal, do a few

11   light household chores, engage in a hobby for limited amounts of time, and provide some

12   care for a young child—all while frequently taking lengthy rests, avoiding lifting or

13   carrying things, lying on the couch or bed for much of the day, and relying on significant

14   help from her husband and mother—does not clearly conflict with the level of limitation

15   Ms. Hayes described in her testimony before the ALJ.  *See Garrison*, 759 F.3d at 1016;

16   *Reddick*, 157 F.3d at 722.

17       The ALJ failed to articulate "specific, clear, and convincing reasons" for doubting

18   Ms. Hayes's credibility, *Burrell*, 775 F.3d at 1137, or "elaborate on *which* daily activities

19   conflicted with *which* part of [her] testimony," *id.* at 1138 (emphasis in original).  As the

20   Ninth Circuit has explained, "[s]heer disbelief is no substitute for substantial evidence."

21   *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  "The clear and convincing

22   standard is the most demanding required in Social Security cases."  *Moore v. Comm'r of*

*Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002); *see also Garrison*, 759 F.3d at 1015

(9th Cir. 2014) (stating that the specific, clear, and convincing reason standard "is not an

easy requirement to meet").  That standard has not been met in this case.

This court recognizes its limited role in these proceedings and acknowledges that

it may not substitute its own judgment for that of the ALJ.  *See* 42 U.S.C § 405(g).  "The

Social Security Act, however, makes clear that courts are empowered to affirm, modify,

or reverse a decision by the Commissioner 'with *or without* remanding the cause for

rehearing.'"  *Garrison*, 759 F.3d at 1019 (quoting 42 U.S.C § 405(g)) (emphasis in

original).  "Usually, [i]f additional proceedings can remedy defects in the original

administrative proceeding, a social security case should be remanded."  *Id.* (alteration in

original) (quoting *Lewing v. Scheweiker*, 654 F.2d 631, 635 (9th Cir. 1981)) (internal

quotation marks omitted).  The court does not decide whether Ms. Hayes is or is not

disabled within the meaning of the Social Security Act.  Instead, because the ALJ's

decision lacked legally sufficient reasons for doubting Ms. Hayes's credibility, and

because the record does contain some cause for doubt, the court remands this action to

the Commissioner for rehearing.  *Burrell*, 775 F.3d at 1142.

## 2.  The ALJ's Evaluation of the Medical Source Opinions

Ms. Hayes argues that the ALJ improperly evaluated the opinions of her

physicians when assessing the limitations caused by her medical conditions.  Specifically,

she contends that the ALJ impermissibly ignored the opinion of her long-time primary-

care physician, Dr. Eva Kojnok  (Op. Brief at 2-3.), and erroneously rejected or

misinterpreted the opinions of Dr. Naila Ahmad, her treating rheumatologist (*id.* at 3-6),

Dr. John Baumeister, a treating pain specialist (*id.* at 6-10), and Dr. David Jarvis, a consulting psychologist (*id.* at 10-11).

The Commissioner's own rules dictate that ALJs "must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the commissioner." SSR 96-5p, 1996 WL 374183, at *2. An ALJ is not bound by the medical opinion of a treating physician, however, on the ultimate question of disability. *Reddick*, 157 F.3d at 725. In conjunction with the relevant regulations, the Ninth Circuit has "developed standards that guide [the court's] analysis of an ALJ's weighing of medical evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

Ordinarily, the opinion of a treating physician is entitled to greater weight than that of an examining physician, and the opinion of an examining physician is likewise entitled to greater weight than that of a nonexamining physician. *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusions." *Id.* at 1012-13. "To reject an uncontradicted opinion of a treating or examining doctor, the ALJ must provide 'clear and convincing reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2008)). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and

1   making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).  "The

2   ALJ must do more than state conclusions.  He must set forth his own interpretations and

3   explain why they, rather than the doctors', are correct."  *Id.* (quoting *Reddick*, 157 F.3d at

4   725).  As will be discussed in more detail below, the court concludes that the ALJ failed

5   to satisfy this standard when evaluating the medical source opinions in this case.

6   **a.  Dr. Eva Kojnok**

7         Ms. Hayes argues that the ALJ erred by failing to give appropriate weight to, or

8   even mention, the opinion of her treating physician Dr. Eva Kojnok when evaluating the

9   severity of Ms. Hayes's limitations.  (Op. Brief at 2-3.)  Ninth Circuit case law explains

10  that, in order "[t]o reject an uncontradicted opinion of a treating or examining doctor, the

11  ALJ must provide 'clear and convincing reasons that are supported by substantial

12  evidence.'"  *Ghanim*, 763 F.3d at 1160-61 (quoting *Bayliss*, 427 F.3d at 1216).  "Even if

13  a treating physician's opinion is contradicted, the ALJ may not simply disregard it."  *Id.*

14  at 1161.

15        Dr. Kojnok has been Ms. Hayes's primary-care physician for several years.  (*See*

16  AR at 221-55.)  Dr. Kojnok treated Ms. Hayes for a variety of ailments.  (*See id.*)  The

17  ALJ included excerpts of the treatment notes from a few of Ms. Hayes's visits with Dr.

18  Kojnok in his written decision.  (*See* AR at 14-16.)  In particular, he mentioned that on

19  September 13, 2011, Ms. Hayes visited "Dr. Kojnok for follow up on her connective

20  tissue disease."  (AR at 14.)  Although the ALJ did summarize a portion of the notes from

21  that visit in his written decision, the ALJ excluded from his analysis an opinion that Dr.

22  Kojnok included in the same report.  That opinion reads as follows:

1    I agree that it would be very challenging for [Ms. Hayes] to go back to
     work especially in her profession as a nurse, but in any profession given the
2    above-stated limitations.  I informed her that I do not perform formal
     disability exams however.  I would be happy to communicate my opinion
3    to her attorney.

4    (AR at 223.)  The Commissioner acknowledges that the ALJ failed to address Dr.

5    Kojnok's opinion directly, but contends that "any omission was harmless."  (Resp. at 5)

6    To support this assertion, the Commissioner first argues that "Dr. Kojnok's opinion was

7    limited to [Ms. Hayes's] ability to perform nursing or other professional work—not [her]

8    overall functional abilities."  (*Id.* at 6.)  This reading of the opinion is unpersuasive for

9    two reasons.

10       First, Dr. Kojnok said that she doubted Ms. Hayes's ability to return to work,

11   "especially in her profession as a nurse, but in *any* profession."  (AR at 223 (emphasis

12   added).)  To conclude that Dr. Kojnok meant only that Ms. Hayes would be unable to

13   perform work in one of the traditional professions strains the ordinary definition of the

14   term "profession," which might simply mean a job of any kind.  *See* Bryan A. Garner,

15   *Garner's Modern American Usage* 662 (3d ed. 2009) (describing the widespread

16   tendency to "call any occupation a profession").  Second, and more importantly, if the

17   ALJ did weigh and reject this opinion because he thought that Dr. Kojnok was referring

18   only to professional nursing work, he ought to have explained that in his written decision.

19   Simply ignoring the opinion provided by Ms. Hayes's treating physician does not amount

20   to substantial evidence for his ultimate determination.  *See Ghanim*, 763 F.3d at 1160-61.

21       The Commissioner also argues that the ALJ probably determined that Dr.

22   Kojnok's opinion was based solely on Ms. Hayes's self-reports.  (Resp. at 6.)  Thus, the

ORDER- 15

1   Commissioner contends, because the ALJ doubted Ms. Hayes's credibility regarding her

2   pain and limitations in general, he was not required to address the opinion of a treating

3   physician when that opinion arose from such self-reports.  (*Id.*)  This argument also fails.

4   If the ALJ believed that Dr. Kojnok's opinion was inconsequential because it was based

5   on Ms. Hayes's self-reports of pain, he was required to articulate that in his decision.

6   And even if that was the ALJ's opinion, the court has already found that his doubt of Ms.

7   Hayes's credibility was not adequately articulated.

8       As mentioned previously, before rejecting "an uncontradicted opinion of a treating

9   or examining doctor, the ALJ must provide 'clear and convincing reasons that are

10  supported by substantial evidence.'"  *Ghanim*, 763 F.3d at 1160-61 (quoting *Bayliss*, 427

11  F.3d at 1216).  Not only did the ALJ fail to "set forth his own interpretations and explain

12  why they, rather than the doctors', are correct," *Garrison*, 759 F.3d at 1012 (quoting

13  *Reddick*, 157 F.3d at 725), he did not even mention Dr. Kojnok's opinion as to Ms.

14  Hayes's limitations and ability to return to employment.  It may well be true that the ALJ

15  did reach a conclusion similar to the one the Commissioner now suggests.  But his court

16  may "review only the reasons provided by the ALJ in the disability determination and

17  may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at

18  1010 (citing *Connett*, 340 F.3d at 874); *see also Burrell*, 775 F.3d at 1141 ("We reiterate

19  that we 'are constrained to review the reasons the ALJ asserts.'" (quoting *Connett*, 340

20  F.3d at 874)).

21      The ALJ's failure to address the uncontradicted opinion of Dr. Kojnok—Ms.

22  Hayes's treating physician—as to the severity of Ms. Hayes's limitations was erroneous

ORDER- 16

1    and requires the court to remand this case to the Commissioner for rehearing.  *See*

2    *Burrell*, 775 F.3d 1141-42 (reversing and remanding for rehearing, in part, because the

3    ALJ failed to give "specific and legitimate reasons supported by substantial evidence" for

4    rejecting the medical assessment of a treating physician).

5                          **b.  Dr. Naila Ahmad**

6          Ms. Hayes contends that the ALJ improperly rejected the opinions of treating

7    physician, Dr. Naila Ahmad.  (Op. Brief at 3-6.)  As discussed earlier, to justify rejecting

8    the uncontradicted opinion of a treating physician, an ALJ must articulate "clear and

9    convincing reasons that are supported by substantial evidence."  *Ghanim*, 763 F.3d at

10   1061 (quoting *Bayliss*, 427 F.3d at 1216) (internal quotation marks omitted).

11         Dr. Ahmad has been Ms. Hayes's treating rheumatologist since 2011.  (AR at

12   500.)  The ALJ did address some of the treatment notes and opinions provided by Dr.

13   Ahmad.  (*See* AR at 16-18.)  In particular, Dr Ahmad wrote a letter on January 17,

14   2013—the day before the administrative hearing—setting forth her opinion about Ms.

15   Hayes's ability to return to work.  The ALJ summarized the letter in the AR at page 17.

16   It reads, in pertinent part, as follows:

17               [Ms. Hayes] has been unable to function as an ER charge nurse because of
                 inability to stay on her feet for more than 15-20 minutes at a time due to
18               pain in her feet and back.  She is unable to move suddenly such as in case
                 of emergencies.  Sudden kneeling, bending, or crouching, such as may be
19               required if reaching down in a stretcher or running code, are difficult for
                 her to complete.  Pain in her hands prevents her from lifting more than a
20               few pounds.  Thus she would be unable to transfer patients.  The "brain
                 fog" she experiences makes her concerned about being able to perform
21               tasks such as correct calculation of medical doses.  The constant pain
                 fatigues her and affects her ability to concentrate.

22

1   (AR at 500.)  The ALJ agreed that Ms. Hayes could not return to her past work as an

2   emergency room charge nurse, but he determined that the other statements in Dr.

3   Ahmad's letter lacked "an objective predicate of record."  (AR at 27.)  Concluding

4   without further explanation that Ms. Hayes's "daily activities show that she can stand for

5   more than 15-20 minutes and lift more than a few pounds," the ALJ gave Dr. Ahmad's

6   opinion "no weight."  (*Id.*)  This summary disregard for the Dr. Ahmad's opinion was

7   erroneous for several reasons.

8       First, Dr. Ahmad did record a number of objective medical findings supporting her

9   opinion.  For example, she diagnosed undifferentiated connective tissue disease and

10  found 11 of 18 tender points.  (*See* AR at 312.)  Second, the ALJ did not point to any

11  particular facts in the record that contradicted the limitations expressed in Dr. Ahmad's

12  opinion.  As mentioned above, an "ALJ must do more than state conclusions.  He must

13  set forth his own interpretations and explain why they, rather than the doctors', are

14  correct."  *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).  Ms. Hayes

15  and the Commissioner each suggests potential aspects of Ms. Hayes's daily activities to

16  which the ALJ might have been referring, and each supplies opposing explanations for

17  those activities.  (*See* Op. Brief at 3-6; Resp. at 7-9.)  This court cannot adopt the

18  rationale supplied by either Ms. Hayes or the Commissioner, however.

19      The court may "review only the reasons provided by the ALJ in the disability

20  determination and may not affirm the ALJ on a ground upon which he did not rely."

21  *Burch*, 400 F.3d at 679 (citing *Connett*, 340 F.3d at 874).  It is possible that the ALJ

22  discounted Dr. Ahmad's opinion because he thought it was based solely on Ms. Hayes's

1    self-reported pain and limitations.  But as the court explained in more detail above, the

2    ALJ failed to apply the correct standard for evaluating Ms. Hayes's own credibility, so

3    such a conclusion would be suspect.  Regardless, when the ALJ gave Dr. Ahmad's

4    opinion "no weight," without providing clear and convincing reasons for rejecting it, he

5    erred.  *See Garrison*, 759 F.3d at 1012-13.  Accordingly, the court remands for rehearing

6    on this issue.  *See Burrell*, 775 F.3d 1141-42.

7                              **c.  Dr. John Baumeister**

8           Ms. Hayes complains that the ALJ improperly rejected the opinion of Dr.

9    Baumeister, a treating pain specialist.  (*See* Op. Brief at 6-10.)  As mentioned previously,

10   the ALJ must provide "clear and convincing reasons that are supported by substantial

11   evidence" before rejecting the opinion of a treating physician.  *Ghanim*, 763 F.3d at 1061

12   (quoting *Bayliss*, 427 F.3d at 1216) (internal quotation marks omitted).

13          Dr. Baumeister is a physician and pain specialist who treated Ms. Hayes for her

14   chronic pain issues.  (*See* AR at 409-23.)  On December 4, 2012, Dr. Baumeister wrote to

15   Ms. Hayes's attorney as follows:

16          I agree that Ms. Hayes is unable to work full-time, [or] even part time, due
            to functional limitation from probable Arnold-Chiari malformation type 1,
17          fibromyalgia syndrome, undifferentiated connective tissue disease, and
            hypermobility syndrome.  She has difficulty sitting for half [an] hour,
18          standing for 15 minutes, lifting/carrying more than ten pounds occasionally,
            and handling objects.  Additionally, irritable bowel syndrome will disrupt
19          her participation in work, and sleep apnea will reduce her concentration,
            ability to make fast decisions, interact with others, adapt to change, and
20          endure stress.

21   (AR at 408.)  The ALJ explained his rejection of Dr. Baumeister's opinion by saying that

22   "there is no objective predicate for his limitations . . . and his opinion is not consistent

1  with the record." (AR at 27.) The ALJ pointed again to Ms. Hayes's caring for her

2  toddler and her hobby of making bead jewelry. (AR at 27.) These reasons are

3  insufficient to constitute substantial evidence for discounting the opinion of a treating

4  physician.

5       First, simply "[t]o say that medical opinions are not supported by sufficient

6  objective findings . . . does not achieve the level of specificity" required by a court

7  reviewing an ALJ's DIB determination. *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.

8  1988). The Ninth Circuit has explained that an ALJ may not demand objective evidence

9  for a disease—such as fibromyalgia syndrome—"that eludes such measurement."

10 *Benecke*, 379 F.3d at 594 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d

11 Cir.2003)) (discussing an ALJ's "misunderstanding of fibromyalgia" and remanding for

12 payment of benefits). Further, when the ALJ stated that Dr. Baumeister's references to

13 irritable bowel syndrome were "not made in the record and there is no record of

14 significant treatment" (AR at 27), he was incorrect. The record reveals that Ms. Hayes

15 was diagnosed with irritable bowel syndrome in May 2011 and treated for the condition.

16 (*See* AR at 238 (treatment notes from Dr. Charles Bedard).) Moreover, references to

17 irritable bowel syndrome and related symptoms and treatment are present throughout the

18 record. (*See, e.g.*, AR at 409-11 (treatment notes of Dr. Baumeister), 271 (treatment

19 notes of Dr. Emily Bradley), 320 (treatment notes of Dr. Nalia Ahmad).)

20      Second, the court has already addressed the extent to which the ALJ

21 misinterpreted Ms. Hayes's daily activities to find evidence of nondisability. Insofar as

22 the ALJ's rejection of Dr. Baumeister's opinion was based on the negative credibility

ORDER- 20

1   finding as to Ms. Hayes herself, that conclusion is suspect.  The ALJ's rationale for

2   disregarding Dr. Baumeister's opinion fails to satisfy the standard of "clear and

3   convincing reasons that are supported by substantial evidence."  *Ghanim*, 763 F.3d at

4   1160-61.  As a result, the court remands for rehearing on this issue.  *See Burrell*, 775 F.3d

5   1141-42.

6                              **d.  Dr. David Jarvis**

7          Ms. Hayes also objects to the ALJ's interpretation of the evaluation provided by

8   Dr. David Jarvis, an examining psychiatrist.  (*See* Op. Brief at 10-11.)  Dr. Jarvis reported

9   that Ms. Hayes's major limitations were probably physical rather than mental.  (AR at

10  294.)  But he concluded that her "combination of depressive, anxious, and especially

11  cognitive disorders with mental fogginess and difficulty paying attention and

12  concentrating would create moderate limitations in her ability to understand, remember

13  and follow complex instructions, and to respond appropriately to or tolerate the pressures

14  and expectations of a formal work setting."  (AR at 294.)  The ALJ stated that he agreed

15  with Dr. Jarvis, but then characterized Dr. Jarvis's conclusion as suggesting that Ms.

16  Hayes should be "limited to simple repetitive work" and reasoned that it would "reduce

17  her stress and would not require her to perform complex tasks."  (AR at 27.)  The ALJ

18  did not articulate how he arrived at that determination or how he found support for it in

19  Dr. Jarvis's opinion.  He simply commented that it "may not be palatable to the claimant,

20  but Social Security is not a vocationally based disability program."  (AR at 27.)

21         In setting forth the proper method for evaluating mental health of DIB claimants,

22  the Commissioner's prior rulings explain that "[b]ecause response to the demands of

work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." SSR 85-15, 1985 WL 56857, at *6. Thus, restricting Ms. Hayes to "simple repetitive work" (AR at 27), will not necessarily cure the moderate difficulty in dealing with the general stress of a work environment that Dr. Jarvis described. *See Richardson v. Astrue*, No. C10-05801KLS, 2011 WL 3273255, at *4 (W.D. Wash. July 28, 2011) ("[A] restriction to simple work-related tasks is not at all synonymous with moderate to marked difficulties in dealing with stress or change . . . ."). The ALJ erred in not properly taking into account the difficulties Dr. Jarvis found plaintiff may have, or at least in not explaining how he came to his conclusion about limiting her to simple repetitive work. The court remands for rehearing on this issue.

### 3. Ms. Hayes's Sleep Apnea

Ms. Hayes argues that the ALJ erroneously failed to categorize her sleep apnea as a severe impairment at step two of the five-step sequential evaluation and to consider it throughout the evaluation process. (*See* Op. Brief at 19.) The Ninth Circuit has explained that "at the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d 1290 (citing 42 U.S.C. § 423(d)(2)(B)) (additional citations omitted). Moreover, "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual['s] ability to work.'" *Id.* (quoting SSR 85-28, 1985 WL 56856, at *3).

ORDER- 22

1    The ALJ acknowledged that Ms. Hayes has been diagnosed with sleep apnea.

2    (AR at 18.)  He did not include it in the list of "severe impairments," however, because

3    he concluded that it "responds well to treatment."  (*Id.*)  Nevertheless, the ALJ continued

4    to consider the condition throughout his evaluation.  (*See* AR at 14, 16-18, 27.)  The court

5    concludes that any error in failing to classify Ms. Hayes's sleep apnea as a severe

6    impairment at step two was harmless, as the ALJ expressly considered the condition

7    throughout his decision.

8                              **IV.    CONCLUSION**

9         For the foregoing reasons, the court concludes that the ALJ failed to articulate

10   legally sufficient reasons for doubting Ms. Hayes's credibility and discounting the

11   medical source opinions.  The court, therefore, REVERSES the final decision of the

12   Commissioner and REMANDS this action to the Commissioner for further administrative

13   proceedings consistent with this order.

14        Dated this 21st day of April, 2015.

15

16

17   _____

18   JAMES L. ROBART
     United States District Judge

19

20

21

22

ORDER- 23